UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel., <br><br> Plaintiff, <br><br> v. <br><br> NOVO NORDISK, INC., <br><br> Defendant. | CASE NO. CV-23-5459 BHS <br><br> ORDER |

THIS MATTER is before the Court on two discovery disputes. The first is the Court's *in camera* review of defendant Novo Nordisk (NNI)'s emails withheld or redacted on attorney/client privilege grounds, the final piece of the State's motion to compel, Dkt. 328.

The second is the State's motion to compel NNI to produce a witness for "Topic 16" of its Rule 30(b)(6) deposition notice. Dkt. 366 (and 367, unredacted[1]). Topic 16

---

[1] The State's unopposed motions to seal its motion and reply, Dkts. 365 and 370, are **GRANTED** and the unredacted versions of those filings, Dkts. 367, 372, and 374, shall remain **UNDER SEAL**.

seeks the identity, quantity, and redistribution of any "reprint" of a journal or article purchased by NNI or anyone on its behalf, and the cost or fees paid.

The issues are addressed in turn.

**A.    The State's motion to compel the *in camera* documents is GRANTED in part and DENIED in part.**

The first dispute relates to NNI's privilege log, and the State's concern that some of the documents NNI withheld or redacted as privileged appeared to have been shared with third parties, and thus are not protected from disclosure. Dkt. 328 at 7. A summary of the dispute is outlined in letters between counsel, Dkt. 329 at 4–5 and 7–8. NNI's letter asserted that some of the communications were made by independent contractors or consultants engaged by NNI and that these third parties' communications with NNI's counsel were privileged. *Id*. at 7 (citing *Anstead v. Virginia Mason Med. Ctr*. No. 21-cv-477 JCC JRC, 2022 WL 116440 at *4 (W.D. Wash. Apr. 2, 2022)). NNI also agreed to produce many of the documents identified in the State's letter. Dkt. 329 at 8. The Court denied the State's motion to compel the remainder without prejudice, and ordered NNI to produce all of the documents the State identified for *in camera* review, because it could not resolve the issue "in a vacuum." Dkt. 359 at 7.

NNI's submittal is in two parts: a set of ten documents[2] that it had withheld as privileged, and a set of six that it produced in redacted form. All are emails or email attachments.

---

[2] The submittal necessarily implies that it reflects the remaining subset of disputed documents, and that the parties' disputes over the rest of the documents that were initially the subject of the State's motion have been resolved.

1     NNI explains that nine of the ten withheld documents were attachments to
2 privileged emails, and that eight of those nine attachments have already been produced as
3 stand-alone documents. The Court's review confirms the former contention. The Court
4 agrees with NNI that producing these eight documents again, as compiled and forwarded
5 as attachments to an email seeking legal advice, would breach the attorney client
6 privilege and perhaps the work product doctrine.

7     The ninth was prepared by an outside consultant but the Court's review confirms
8 that it was a draft sent to NNI's in-house counsel for the purpose of obtaining legal
9 advice. These nine documents were properly withheld as privileged.

10     The final document has not been otherwise produced and is not an attachment. It is
11 an email string including a short, simple legal question and an attorney's short, simple
12 answer. It too was properly withheld as privileged. The State's motion to compel
13 production of these documents is **DENIED**.

14                                                  \*\*\*

15     The State has already obtained redacted versions of the second set of six
16 documents submitted for *in camera* review. It is not entirely clear where these documents
17 "fit" into the parties' "improper redaction" dispute first evidenced in the State's May 23,
18 2024, letter, Dkt. 329 at 5. That letter identified eight documents that it contended were
19 improperly redacted, because they were transmitted to third parties. *Id*. NNI's June 11
20 letter response withdrew the redactions as to some of those documents. *Id*. at 6. The
21 State's ensuing motion to compel, Dkt. 328, focused on its assertion that *all* of NNI's
22

redactions based on its asserted "functional equivalent to an employee (FEE)" privilege were improper. Dkt. 328 at 7–13.

NNI's response asserted that only four of the documents referenced in the State's May letter were still at issue:

    NNISiegel_00071186;

    NNISiegel_00071189;

    NNISiegel_00071166; and

    NNISiegel_00059321.

Dkt. 342 at 12. It asserted that the State's new challenge to ten additional documents were improper, in part because it had failed to meet and confer on them. Dkt. 342 at 13. The State's reply did not address this argument, and did not specify which redactions it was challenging. Dkt. 348.

In any event, NNI's *in camera* submittal includes the four documents listed above, and two others: NNISiegel_0005860 and NNISiegel_00058565.

The FEE recognizes that the attorney-client privilege in the corporate context extends to corporate counsel communications with corporate employees and equivalents "in order to secure legal advice." *United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010). NNI asserts that its redactions reflect it relaying legal advice from its counsel to its contractors, on the subject matter for which they were engaged. Dkt. 342 at 12–13.

The State argues that to properly invoke the FEE exception to the privilege waiver, NNI was required to provide a "detailed factual showing" with respect to each entity and each employee listed on its privilege log. Dkt. 328 at 11–12 (citing *In re Bieter Co.*, 16

F.3d 929, 937 (8th Cir. 1994); *United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010) (adopting *Bieter*)); *see also* Dkt. 348 at 6–7.

The Court has reviewed the four redacted documents listed in NNI's response to the underlying motion to compel, Dkt. 342 at 12. NNI's description of the documents in that filing was accurate, and the Court concludes that the redactions in these four documents reflect consultants seeking and obtaining legal advice about the topics on which they were engaged. The Court will not order the production of unredacted versions of NNISiegel_00071186, NNISiegel_00071189, NNISiegel_00071166, or NNISiegel_00059321.

The final two documents submitted for in camera review reflect a third party consultant's communications to NNI about his contractual concerns and needs, and NNI employees' internal discussions about accommodating them. The third party's communication to NNI does not seek legal advice; it advises NNI of his position on a legal matter. The remainder of the redacted communications in these documents are between NNI employees. They do implicate the attorney client privilege; they reflect or seek NNI's counsel's input on legal issues. NNI should revise its redaction at the top of the second page of NNISiegel_0005860 to "reveal" the third party's quoted communication. The remainder of the redactions in these two documents are proper. The State's motion to compel unredacted production is **GRANTED** in part and **DENIED** in part.

**B.     Washington's motion to compel a Rule 30(b)(6) witness on the "reprints" Topic 16 is DENIED.**

The State argues that Topic 16 is relevant because NNI's publication team chose authors, developed, and help write articles under the auspices of purportedly independent journals. It alleges NNI then purchased "reprints" of these articles and disseminated them to physicians and others to support the off label, high dose and prophylaxis uses the State claims resulted in false claims for reimbursement. Dkt. 367 at 4.

The State contends NNI objected to Topic 16, asserting that there is no record of any reprints related to NovoSeven or hemophilia provided by NNI to any healthcare provider listed in the Washington Medicaid claims data the State produced in this litigation. Dkt. 367 at 5. NNI also resisted designating a Rule 30(b)(6) Topic 16 "reprints" witness because it asserts that the State failed to "hold open" the two completed Rule 30(b)(6) depositions. Dkt. 367 at 5–6.

NNI's response to the motion contends the State has unfairly re-characterized its Topic 16 as identifying a "classic" Rule 30(b)(6) deposition topic—record-keeping—but that the State's Rule 30(b)(6) deposition notice itself did not seek such testimony. Dkt. 368 at 2–3. It argues that the State's motion is in belated attempt to seek new discovery, after the discovery cutoff. NNI argues that it told the State during negotiations over the Rule 30(b)(6) topics that there was no evidence that NNI distributed any reprints in Washington, and that as a result the State "dropped" Topic 16 before the 30(b)(6) depositions. *Id*. Specifically, the State revised its Topic 16 to a "request [for] NNI to prepare its witness to testify to identify reprints on off label uses, including the quantity

and costs of those reprints, that NNI purchased from *Haemophilia* that could have been distributed to Washington hemophilia treatment providers, and under what circumstances that would have occurred." Dkt. 368 at 4 (citing Dkt. 369-7). NNI demonstrates that it objected to that request as hypothetical—what reprints "could have been" distributed in Washington when there was no evidence that any were—and that the State proceeded with and concluded the depositions without further resolution, and thus waived its effort to re-visit the dispute now. *Id*. NNI also argues that the reprint topic has been thoroughly covered in other discovery. *Id*.

Finally, NNI argues, correctly, that its own failure to seek a protective order on Topic 16 is not a waiver of its objection. Dkt. 368 at 8 (citing *Lardizabal v. Arvest Cent. Mortg. Co.*, 2023 WL 2229261 at *3 (S.D. Cal. Feb. 24, 2023) (there is no "authority that supports [the] position that [a] [d]efendant's failure to obtain a protective order 'is fatal' and entitles [p]laintiff to depos[itions]" they seek.)).

The State's Reply emphasizes the scope NNI's "reprint" purchasing strategy, and disputes that the topic has already been covered. It argues that even the reprints were not disseminated directly to Washington physicians, they were likely exposed to other professionals who were in turn influenced by this strategy. Dkt. 372 at 2–4. The State denies that it seeks new discovery about NNI's "record retention" policies but concedes that part of its planned inquiry relates to documents that may have been "lost, destroyed, or are otherwise unsearchable." *Id*. at 5. And it disputes that it dropped or waived Topic 16 either by proceeding with the Rule 30(b)(6) depositions or by agreement. It argues that NNI waived its objections by not seeking a protective order. *Id*. at 6–7.

1     The Court is not persuaded that the resolution of this dispute comes down to whether either party waived their objections; the contours of the dispute have been well preserved. It does conclude that reprints disseminated outside Washington are not relevant, and that the State's revised Topic 16 and its motion seek to explore the lack of Washington dissemination by exploring a new topic: whether NNI's record-keeping would allow for lost, destroyed, or otherwise unsearchable documents. The Court is also persuaded that the reprints topic has been the subject of other discovery. For these reasons, the State's motion to compel NNI to designate a Rule 30(b)(6) deponent for Topic 16 is **DENIED**.

    **IT IS SO ORDERED**.

    Dated this 14th day of February, 2025.

    BENJAMIN H. SETTLE
    United States District Judge