UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel., <br><br> Plaintiff, <br><br> v. <br><br> NOVO NORDISK, INC., <br><br> Defendant. | CASE NO. 23-5459 BHS <br><br> ORDER |

THIS MATTER is before the Court on defendant Novo Nordisk, Inc.'s (NNI) motion for relief regarding the State's spoliation of evidence, Dkt. 381. This case concerns NNI's alleged violations of the False Claims Act (FCA) and Anti-Kickback Statute (AKS) through the off-label use of and illegal promotion of its hemophilia treatment, NovoSeven. The State claims it paid millions of dollars for Patient A's NovoSeven as the result of NNI's wrongful conduct.

In 2007, Plaintiff State of Washington began to investigate Patient A's medical records. Dkt. 381 at 6. Physicians and various staff at the State Health Care Authority (HCA), including Dr. Jeffrey Thompson, Gail Kreiger, and Judy Hidell Smith, reviewed

ORDER - 1

Patient A's medical records and prescription of NovoSeven. *Id.* at 5–6. This included a 2009 Hemophilia Working Group. *Id.* at 6. In 2014, the HCA's former Pharmacy Rates Unit Manager, Myra Davis, submitted a complaint to the Medicaid Fraud Control Unit alleging that "extraordinary amounts" of NovoSeven were being shipped to Patient A's home. Dkt. 382 at 5. She asked for an investigator, speculating that Patient A was either "diverting it or simply wasting it," or was being "used by the manufacturer as a guinea pig and cash cow." *Id.* at 6. She reported that they could not find "documentation regarding" conversations that Dr. Thompson had with Patient A's primary care provider, Dr. Louie. *Id.* at 11. Davis testified she maintained a box of "data reports, data summaries" about NovoSeven until she left the agency in 2019. *Id.* at 7.

Dr. Judy Zerzan-Thul, a State 30(b)(6) deponent, testified that the State "could not find evidence of medical necessity for the high amounts that were being prescribed." Dkt. 343-2 at 504. In support, she referenced the complaint to the Medicaid Fraud Unit and an "email conversation" that demonstrates the State "recouped some of the payment" for NovoSeven "because [the State] found it not medically necessary." *Id.* at 504, 506–07.

The State's privilege logs show it anticipated litigation as early as 2014. Dkt. 382 at 78. Two years later, it issued its first "litigation hold" on the State Health Care Authority (HCA). *Id.* at 100. The State appears to have taken no further action to preserve HCA's records until March 2020, when it sent HCA an updated litigation hold. *Id.* The follow up did not notify what NNI asserts are key HCA personnel who would have had relevant information. Dkt. 381 at 5. In 2023, the State finally notified these HCA staff

ORDER - 2

members, issuing a legal hold on their "custodian mailboxes." Dkt. 382 at 101. The State did not disclose these facts to NNI until January 10, 2025, after the close of discovery.

NNI contends the State has not produced any documents reflecting Dr. Thompson, Krieger, and Hidell Smith's reviews of Patient A's medical records, the Hemophilia Working Group, or Davis's reports about NovoSeven. *Id.* at 7. NNI argues the State's failure to preserve highly relevant evidence warrants an adverse inference against the State at summary judgment, and if necessary, at trial. *Id.* at 8. Specifically, it seeks an adverse inference that if the documents were available, they would show that the State paid for NovoSeven that was medically necessary. *Id.* at 11. It also seeks monetary sanctions in the form of attorneys' fees. *Id.* at 9.

The State responds that NNI is speculating about the "existence of certain notes" and that even if the documents did exist, they are legally irrelevant and that "it is unlikely that they were subject to retention." Dkt. 405 at 2–3, 13. It also argues NNI has not demonstrated it would be prejudiced by the fact the documents are unavailable. *Id.*

The duty to preserve records "arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Surowiec v. Capital Title Agency, Inc.*, No. CV–09–2153–PHX–DGC, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011) (internal quotation marks omitted). The Court has discretion to impose sanctions upon a party who fails to retain such records. To determine whether a spoliation sanction in the form of an adverse inference jury instruction is warranted, the Court looks to: 1) whether there is a duty to preserve the evidence; 2) the spoliator's level of culpability ; 3) the prejudiced suffered by the non-spoliation party; and 4) whether there is a lesser sanction

that will avoid substantial unfairness to the spoliating party. *Scott v. Moniz*, No. 3:14–CV–5684–RJB, 2015 WL 3823705, at *3 (W.D. Wash. 2015); *Leon v. IDX Sys. Corp.*, No. C03–1158P, 2004 WL 5571412, at *3 (W.D. Wash. 2004), *aff'd.*, 464 F.3d 951 (9th Cir. 2006)). A finding of bad faith is only required for a sanction of dismissal. *Leon*, 464 F.3d at 958.

      NNI has established that, against this standard, an adverse inference is warranted.

      First, the State had a duty to preserve documents starting no later than 2014, when it began creating privilege logs in anticipation of litigation. It knew or should have known that documents relating to NovoSeven, including those from Dr. Thompson's or the 2009 Hemophilia Working Group's review of Patient A's records, were relevant to potential litigation.

      Second, it is unreasonable to conclude that there were no notes taken or other documents relating to Dr. Thompson's or the 2009 Hemophilia Working Group's review. It is instead reasonable to infer from the fact the State paid for Patient A's NovoSeven that at least some of the physicians in the 2009 Hemophilia Working Group supported the single (high) dose and prophylactic use of NovoSeven and that the lost or destroyed records would demonstrate this. This inference is bolstered by the Washington State Attorney General investigator's testimony that she did not remember seeing anything that demonstrated that Patient A's NovoSeven treatments were unnecessary. Dkt. 381 at 12. HCA continued to pay NNI for NovoSeven single-doses and prophylactic uses after HCA's reviews, justifying the inference that these payments were for medically necessary treatment.

1       Although Dr. Zerzan-Thul testified the State did not find the treatments medically necessary, her only support is the complaint filed with the Medicaid Fraud Unit—which expresses concerns about, not proof of, medical unnecessity—and an email that the State does not reference anywhere in its response to NNI's motion.

      The State is culpable in failing to timely preserve this evidence. The State does not show that it took the necessary steps to preserve important records when it began its initial investigations 18 years ago. Davis's complaint to the Medicare Fraud Unit shows that some documents were already missing by 2014, but those pertain only to Dr. Thompson's and Dr. Louie's conversations about NovoSeven. Dkt. 382 at 11. It created privilege logs anticipating litigation as early as 2014 yet waited years before following up with HCA to ensure these records were preserved.

      Third, NNI was prejudiced by the State's failure to preserve relevant documents. Without Dr. Thompson's and the 2009 Hemophilia Working Group's records, NNI lost the opportunity to prove the State deemed NovoSeven medically necessary. NNI persuasively argues that medical necessity is relevant to the issues of causation, materiality and damages. Dkt. 382 at 11. The State seems to concede, however, that "medical necessity <u>at the time of payment</u> is evidenced by the payment itself, as a prerequisite of Medicaid payments." Dkt. 405 at 13–14. NNI was prejudiced by the loss of these documents.

      NNI is entitled to an adverse inference jury instruction conveying, "Since there were likely records in the HCA's possession that have been lost or destroyed and that those records would have likely shown that the reviewers approved the payments for the

NovoSeven prescription and, because there was evidence supporting the medical necessity for patient A, you may, but are not required to, infer that the prescriptions at issue were medically necessary."[1] The Court may in reviewing the parties' motions for summary judgment consider this inference as well. NNI's motion for attorneys' fees is **DENIED**.

NNI's motion for relief, Dkt. 381, is to this extent **GRANTED**.

**IT IS SO ORDERED.**

Dated this 17th day of June, 2025.

BENJAMIN H. SETTLE
United States District Judge

---

[1] The parties may propose a different joint instruction or submit separate proposals. The Court will decide whether to give one of the proposed instructions to the jury or retain this one.

ORDER - 6