UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> *Ex rel.*, <br><br> JAMIE SIEGEL, M.D., <br><br> Plaintiff-Relator, <br><br> v. <br><br> NOVO NORDISK, INC., <br><br> Defendant. | CASE NO. C23-5459 BHS <br><br> ORDER |

THIS MATTER is before the Court on plaintiffs[1] Siegel and Washington's *Daubert* motion to exclude the testimony of defendant Novo Nordisk Inc. (NNI)'s expert witness, Nicholas Janiga, Dkt. 423.

---

[1] The Court refers to plaintiff relator Siegel and intervenor plaintiff State of Washington as "Washington" for clarity and ease of reference, unless the context requires otherwise. Siegel filed this motion.

ORDER - 1

1  Janiga is an Accredited Senior Appraiser in Business Valuation. Dkt. 423-2. He
2  has extensive knowledge and experience in appraising healthcare business enterprises and
3  medical professionals' compensation. He has extensive experience in analyzing the fair
4  market value of healthcare transactions and arrangements involving the Anti-Kickback
5  Statute (AKS). His Report concludes that the compensation NNI paid to 12 healthcare
6  providers between 2005 and 2016 was consistent with fair market value. *Id.* at 4, 19.

7  Washington challenges Janiga's testimony because "his opinions are not premised
8  on sufficient facts or data, nor are they the product of reliable principles and methods."
9  Dkt. 423 at 8. NNI responds that Washington does not dispute Janiga's opinion that the
10 physicians were paid fair market value, but instead "attacks [him] for what he did *not*
11 say." Dkt. 440 at 2.

12 A qualified expert may testify in the form of an opinion or otherwise only if the
13 proffered testimony is both relevant and reliable. Fed. R. Evid. 702; *Teradata Corp. v.*
14 *SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024) (citing *Daubert v. Merrell Dow*
15 *Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 and *Daubert* impose on the
16 district court a "gatekeeping" duty to ensure that opinion testimony is relevant and
17 reliable, and an expert's opinion should be excluded if it does not have a reliable
18 foundation or if it is not based in the knowledge and experience of the relevant discipline.
19 *Sonneveldt v. Mazda Motor of Am., Inc.*, 2024 U.S. App. Lexis 32836, *3 (9th Cir. Oct.
20 21, 2024) (citing *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010)). "Expert
21 opinion testimony is relevant if the knowledge underlying it has a valid connection to the
22 pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in

the knowledge and experience of the relevant discipline." *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, 2024 U.S. Dist. Lexis 81690, *5 (N.D. Cal. March 31, 2024) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 739 F.3d 960, 969 (9th Cir. 2013)). When an expert meets the Rule 702 threshold, "the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d 558 at 565.

First, Washington argues Janiga incorrectly assumes the physicians provided necessary bona fide services. Dkt. 423 at 7. It also claims Janiga's opinion omits other benefits physicians received from NNI, such as expenses for meals, lodging, and travel, and assistance with writing and publishing medical scholarship. *Id.* at 4, 6–7.

These issues are beyond the scope of Janiga's Report. NNI asked Janiga only to opine about whether the physicians' compensation was fair market value. He was not asked to, and did not, opine on any other elements of the AKS's "Safe Harbor." *See* Dkt. 424-4 at 8, Deposition of Janiga ("my opinion . . . is limited to what's the fair market value for the . . . service."); *id.* at 10 ("[R]eimbursement of expenses that are incurred and not direct compensation . . . isn't part of our scope of our analysis. We really focused on compensation for services and time."). These are legitimate areas for cross-examination, not bases for disqualifying Janiga based on the limited nature of his study.

Washington objects that Janiga analyzed only 12 physicians, and argues he should have considered how many other consultants "in a position to prescribe NovoSeven" were paid by NNI. Dkt. 423 at 8. NNI responds that it provided the 12 physicians' compensation information consistent with the parties' early discovery discussions. Dkt.

440 at 3. The Court again views this disagreement about the scope of discovery as an area for cross-examination, not a reason to find Janiga's methodology flawed.

Washington also asserts Janiga's Report does not account for the fact that NNI's compensation structure is based on a physician's "geographical sphere of influence." Dkt. 423 at 7. It argues this compensation structure is improper because physicians may end up receiving work and compensation for the purpose of influencing other physicians. *Id.* at 3. The Court views a physician's influence in the medical community akin to stature and reputation. This is a legitimate factor in arriving at a physician's compensation and goes to the weight, not admissibility of Janiga's testimony. Washington may cross-examine Janiga on this issue.

Finally, Washington argues Janiga's Report does not mention that Dr. Craig Kessler, the Editor-in-Chief of the publication *Haemophilia*, received "revenue based compensation from that publication whose revenue was enhanced by [NNI's] purchase of reprints." Dkt. 423 at 4. Washington additionally contends NNI directly paid Dr. Kessler for his advice on this case. *Id.* NNI persuasively responds that Janiga was "not asked to analyze compensation paid by third parties," an issue that is nonetheless irrelevant to the scope of Janiga's study. Dkt. 440 at 10. And Dr. Kessler's advice to NNI on this case pre-dates Washington's allegations that NNI inappropriately paid Dr. Kessler. Any compensation he received for his advice is not relevant to Janiga's opinion that Dr. Kessler was compensated at fair market value.

Janiga has sufficient expertise and experience appraising healthcare enterprises and compensation arrangements. His knowledge, background, and opinions about

whether NNI compensated the 12 physicians at fair market value satisfy Rule 702's requirement in that his testimony will assist the jury in understanding the evidence and determining facts in issue. His testimony will be permitted because he is a qualified expert in the healthcare compensation appraisal through education, training, experience, knowledge, and skill, his report is based on sufficient facts or data, and his opinions are the product of the reliable application of principles and methods.

Washington's motion to exclude Janiga's opinion, Dkt. 423, is **DENIED**.

**IT IS SO ORDERED**.

Dated this 15th day of July, 2025.

_____
BENJAMIN H. SETTLE
United States District Judge