The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　Plaintiffs,<br>　　　　　　*Ex rel.*<br><br>JAMIE SIEGEL, M.D.,<br><br>　　　　　　Plaintiff-Relator,<br><br>　　v.<br><br>NOVO NORDISK INC.,<br><br>　　　　　　Defendant. | No. 3:23-cv-05459-BHS<br><br>**DEFENDANT'S TRIAL BRIEF** |

## I. INTRODUCTION

The Court has set this case for a jury trial to begin on October 17, 2025. More than 15 years after the State of Washington began investigating NNI's practices related to its life-saving hemophilia drug NovoSeven®—and nearly a decade after this litigation began—neither the State nor Relator has gathered the evidence to prove their claims that NNI caused the submission of false claims for payment of NovoSeven® used by Washington patients, in violation of the federal and Washington False Claims Acts ("FCA") and Washington Fraudulent Practices Act ("WFPA"). That's because NNI's conduct was lawful and all claims for NovoSeven® were reimbursable.

## II. FACTUAL BACKGROUND

The Court is already familiar with the underlying facts and legal theories after deciding the parties' summary judgment and *Daubert* motions. In short, NNI developed a drug—NovoSeven®—that was one of just two products on the market during the relevant time used to treat bleeding in patients with hemophilia and inhibitors. NNI partnered with leading clinician thought leaders to do research that led to breakthrough understandings that improved patient care. These include the medically accepted and necessary practices of using NovoSeven® prophylactically to prevent bleeds, as well as administering combined doses that, among other benefits, eased the burden on caregivers for the vulnerable hemophilia community. Like all pharmaceutical companies, and as permitted by the Food and Drug Administration ("FDA") guidance, NNI shared information about that research, including in the form of published peer-reviewed journal articles, with the treatment community. And like many other pharmaceutical companies, NNI sponsored a patient support program that provided modest grants for medical expenses and education for patients with this rare and critical disease. None of this was against the law.

The evidence will show that NNI did not promote NovoSeven® for off-label use to any Washington Medicaid prescriber or patient. The evidence will also show that the off-label use of NovoSeven® by Washington patients was medically necessary and accepted, and therefore

DEFENDANT'S TRIAL BRIEF
Case No. 3:23-cv-05459-BHS

2

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

4907-4955-6841v.2

reimbursable by Washington Medicaid.[1] The evidence will show that NNI did not pay kickbacks to any physician to induce a NovoSeven® prescription or recommendation. And the evidence will show that NNI also did not provide anything of value to a Washington Medicaid patient to induce NovoSeven® prescriptions. And certainly nothing NNI did caused the pharmacies that dispensed NovoSeven® to patients to submit false claims for reimbursement to [Medicare or] Washington Medicaid. The jury will learn all of this through testimony from current and former NNI employees, hemophilia thought leaders who partnered with NNI to do research, treating physicians and caregivers, and retained experts.

By contrast, after nearly 15 years of investigation, Plaintiffs will bring no evidence to prove their claims by a preponderance of the evidence or—for the WFPA claim—by clear and convincing evidence. At bottom, Plaintiffs will not present a single patient who will testify that they took NovoSeven®, including off label, because of anything done by NNI. That also means Plaintiffs will not present the patient whose treatments reflect the overwhelming majority of alleged damages (and Plaintiffs stymied early efforts to secure that patient's testimony during discovery). His mother—the only caregiver for a Washington Medicaid patient the jury will hear from—will in fact testify that the patient support benefits NNI funded did not impact her son's use of NovoSeven® in any way. Plaintiffs similarly will not present a single prescribing physician or hemophilia "key opinion leader" who will testify that they wrote or recommended a prescription of NovoSeven® because of something done by NNI. To the contrary, the only physician who treated any of the Washington Medicaid patients at issue will testify (by deposition) that his treating decisions were driven by his independent medical judgment and his fervent efforts to keep his patient alive. Nor will Plaintiffs present any clinical expert to address medical necessity or reimbursability, any damages expert, or any expert who can testify to causation.

---

[1] To the extent Medicare claims stay in the case, the evidence will show that those off-label uses were also reasonable and necessary.

Against an array of two retained and four other world-renowned hematologists, Relator—driven by the chance to win tens of millions of dollars—will baselessly accuse dozens of doctors, some of whom she's never met, of unethical conduct in authoring scientific articles whose accuracy no witness or other evidence can disprove. And for its part, the State of Washington can muster no support for its own case, having inexcusably failed for ten years to place a single custodian's files on hold, leading to the loss of an unknown number of documents to NNI's clear prejudice.

NNI looks forward to presenting its case to the jury.

### III.    LEGAL ISSUES

Following the Court's ruling on summary judgment, the Court identified several issues for pretrial briefing. Dkt. 510. The parties have briefed those issues, as well as others on which the Court allowed briefing during the August 26, 2025 status conference. *See* Dkts. 514, 521.

The parties have since filed motions in limine. Dkts. 523, 525. Concurrently with this filing, the parties are also submitting their joint agreed jury instructions and joint statement of disputed jury instructions. The submissions highlighted three specific issues the Court will need to resolve in order for the parties to prepare their cases for trial.

First, Plaintiffs' Instruction #35 revealed that Plaintiffs intend to introduce at trial a new theory of FCA liability that is not pleaded in the Third Amended Complaint, and that has no basis in either law or evidence. The Instruction asserts that NNI "certified to the Government that it would comply with its US Code of Conduct," and then instructs the jury that if NNI "violated its US Code of Conduct, all its Medicare and Medicaid claims are false." NNI is not aware of any evidence adduced in this case that Plaintiffs could offer to show NNI certified compliance with its own US Code of Conduct, much less that it did so in connection with the submission of a claim for payment. Plaintiffs' attempt to raise this theory in a proposed jury instruction highlights a risk that Plaintiffs could mislead the jury with assorted references to statements NNI made that are irrelevant because they have no connection to any actual claim for reimbursement submitted to

DEFENDANT'S TRIAL BRIEF  
Case No. 3:23-cv-05459-BHS  
4  
SIDLEY AUSTIN LLP  
One South Dearborn Street  
Chicago, IL 60603  
Tel: (312) 853-7000  

4907-4955-6841v.2

[Medicare or] Washington Medicaid.[2] In previous briefing, NNI raised a similar concern specific to any reference at trial to the Corporate Integrity Agreement. *See* Dkt. 521 at 32. But Plaintiffs' Instruction #35 suggests the need for a broader ruling that Plaintiffs cannot introduce evidence of alleged false certifications by NNI without establishing the relevance through a prima facie showing of a specific representation in a claim for payment submitted to [Medicare or] Washington Medicaid that implies compliance with a material requirement for payment.[3]

Plaintiffs' proposed jury instructions also raised two other instructional issues that require resolution for the parties to effectively prepare their trial presentations, and that NNI will address with supplemental briefing for the court by October 1, 2025.[4]

1. Whether Plaintiffs bear the burden of showing that a claim submitted for an off-label use is false because it was not medically necessary for the particular patient and therefore not eligible for reimbursement.

2. Whether Plaintiffs bear the burden of proving that specific prescriptions were "actually caused" by off-label promotion or the "but-for" result of kickbacks under the AKS.

The first of these—addressing the burden-shifting proposed by Plaintiffs in a proposed jury instruction without any supporting case law—is fundamental to NNI's trial planning. If NNI bears the burden of proving something, it must know that now in order to prepare its case. So too with

---

[2] *See, e.g.*, *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 332 (9th Cir. 2017) (concluding a relator's FCA claim failed as a matter of law where there was "no evidence" that the vouchers at issue made "any specific representations" that implied defendant's compliance with the requirements relator identified); *see also id.* at 33(explaining that the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment'") (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011)).

[3] *See Kelly*, 846 F.3d at 332.

[4] NNI will also be prepared at the pretrial conference to address the issues raised in the parties joint briefing requested by the Court following the August 26, 2025 status conference. *See* Dkt. 521.

| DEFENDANT'S TRIAL BRIEF | 5 | SIDLEY AUSTIN LLP |
| Case No. 3:23-cv-05459-BHS | | One South Dearborn Street |
| | | Chicago, IL 60603 |
| | | Tel: (312) 853-7000 |

4907-4955-6841v.2

whether the "resulting from" provision of the AKS requires Plaintiffs to satisfy the but-for standard endorsed by three Circuits or the minoritarian view adopted by just one.

Running throughout Plaintiffs' submissions—from their motions in limine to their proposed jury instructions—are three false premises.

First, Plaintiffs cannot shrug off the elements needed to establish false claims and suggest that, if they prove that NNI promoted NovoSeven® off label, Plaintiffs' job is done. Not so. Instead, and as the Court's summary judgment order reflects, establishing off-label promotion is just one of many gates through which Plaintiffs must pass to show liability. Plaintiffs must connect off-label promotion to the submission of particular claims for reimbursement that are not reimbursable (because, for Washington Medicaid, they were not for medically necessary or accepted treatment). And it must show that NNI's supposed off-label promotion actually caused a particular doctor to write a particular prescription for NovoSeven® off-label use, that NNI knew the claims submitted were not reimbursable, and that the supposed falsity was material to the government's payment decision.

Second, Plaintiffs cannot casually call any compensation to physicians a kickback. It must establish that such compensation was more than fair market value compensation for services performed, to induce NovoSeven® prescriptions or recommendations, was made with knowledge that the conduct was unlawful, and was the but-for cause of the submission of false claims. And as to some payments, Plaintiffs must overcome NNI's affirmative defense that it complied with a regulatory safe harbor for personal services provided by certain physicians.

Third, Plaintiffs similarly cannot skirt the elements of their claim based on alleged patient kickbacks merely by calling any benefit received by a Washington Medicaid patient a kickback. Here too, Plaintiffs must show an intent to induce NovoSeven® prescriptions, knowledge by NNI that its support of the benefits was unlawful, and that claims "resulted from" the alleged kickbacks.

### IV. TRIAL STRUCTURE

The Court has set aside at least 12 court days for the jury trial in this matter.

The parties have worked cooperatively in preparing to use that time efficiently and will continue to do so. In preparing their Joint Pretrial Order, the parties stipulated to dozens of agreed facts and to the admissibility of many of one another's proposed trial exhibits. NNI also commits to working with Plaintiffs and the Court to ensure the convenience of third-party witnesses, including if any of those witnesses must be called out of order.

### V. CONCLUSION

Plaintiffs will not be able to meet their burden to prove their claims at trial.

Dated: September 26, 2025                           Respectfully submitted,

By: */s/ Jaime L.M. Jones*
Jaime L.M. Jones (*pro hac vice*)
Matthew Bergs (*pro hac vice*)
Ross O. Kloeber (*pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
jaime.jones@sidley.com
mbergs@sidley.com
rkloeber@sidley.com

Mark P. Guerrera (*pro hac vice*)
Jennifer L. Saulino (*pro hac vice*)
Sidley Austin LLP
1501 K Street, NW
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
mguerrera@sidley.com
jennifer.saulino@sidley.com

By: /s/ *John Wolfe*
John Wolfe (WSBA# 8028)
Aaron Brecher (WSBA# 47212)
Orrick Herrington & Sutcliffe LLP
wolfe@orrick.com
abrecher@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98104-7097
Telephone: (206) 839-4332
Facsimile: (206) 839-4301

*Attorneys for Defendant Novo Nordisk Inc.*

DEFENDANT'S TRIAL BRIEF
Case No. 3:23-cv-05459-BHS

8

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

4907-4955-6841v.2