The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al*., <br><br>                  Plaintiffs,<br>                  *Ex rel*.<br><br>JAMIE SIEGEL, M.D.,<br><br>                  Plaintiff-Relator,<br><br>    v.<br><br>NOVO NORDISK INC.,<br><br>                  Defendant. | No. 3:23-cv-05459-BHS<br><br>**DEFENDANT NNI'S SUPPLEMENTAL MEMORANDUM ON JURY INSTRUCTIONS** |

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

1

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

## INTRODUCTION

As Novo Nordisk Inc. ("NNI") noted in its trial brief, Plaintiffs' proposed jury instructions raise two fundamental legal issues that require resolution before trial so that the Parties can effectively prepare their trial presentations.[1]  Dkt. 539 at 5.  First, NNI seeks to clarify that Plaintiffs bear the burden of proving the falsity element of their False Claims Act ("FCA") claims based on off-label promotion.  Doing so requires Plaintiffs to prove that claims were not eligible for reimbursement under Washington Medicaid because they were not medically accepted and/or not medically necessary.[2]  Second, NNI seeks to clarify (1) the standard for interpreting the "resulting from" language connecting Anti-Kickback Statute ("AKS") violations to FCA falsity; and (2) the causation standard that applies to Plaintiffs' FCA claims based on off-label promotion.  Certainty on these issues will benefit both sides and facilitate clear presentations to the jury.[3]

## I. PLAINTIFFS BEAR THE BURDEN OF PROVING FALSITY FOR THEIR FCA CLAIMS PREMISED ON OFF-LABEL PROMOTION

### A. Introduction and Background

Trial begins in less than three weeks.  By now, it should be clear that Plaintiffs bear the burden of proof for each element of their claims.  Instead, Plaintiffs' jury instructions show they aim to shift the burden of proving a FCA violation based on off-label promotion onto NNI.  Plaintiffs' proposed jury instruction #16 states:

> If Novo Nordisk promoted NovoSeven® for purposes not approved by the FDA, *it bears the burden* of demonstrating that the drug was medically accepted and was medically necessary for the specific patient.

Dkt. 538 at 29 (emphasis added).  Plaintiffs do not cite any authority for the burden-shifting this instruction proposes.  To NNI's knowledge, no such authority exists.

---

[1] These are not the only issues to resolve before trial, but they require resolution in time for the Parties to prepare their trial presentations.  NNI reserves all other objections.

[2] If Medicare stays in the case, Plaintiffs would be required to establish claims submitted to Medicare that were for an off-label use that is not "reasonable and necessary."  Dkt. 514 at 7.

[3] NNI proposed a joint submission on these issues but Plaintiffs declined.

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

2

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

Instead, to prove the "falsity" element of FCA claims based on alleged off-label promotion, Plaintiffs must prove the submission of claims that were not eligible for reimbursement by Washington Medicaid—*i.e.*, claims that were for an off-label use that was not medically accepted and/or not medically necessary for the particular patient. That burden falls entirely on Plaintiffs because falsity is one of the "essential elements" of Plaintiffs' FCA claims.[4]

Plaintiffs' trial brief confirms that Plaintiffs believe they can shrug off that burden at trial. Plaintiffs are wrong. NNI requests that the Court make that clear now because the Parties cannot prepare for trial without certainty about what Plaintiffs must prove to establish a violation of the FCA based on alleged off-label promotion. The Court should also clarify before trial that the new theories introduced by Plaintiffs' trial brief do not relieve them of the burden to prove claims that were false because they were not for a medically accepted use and/or not medically necessary.

**B.     Argument**

**(1) Plaintiffs Bear the Burden of Proving Claims for Off-label Use of NovoSeven®**
**Were Not Eligible for Reimbursement.**

Off-label promotion is not a *per se* violation of the FCA. As the U.S. Department of Justice ("DOJ") recently emphasized, provisions of the Food, Drug, and Cosmetic Act ("FDCA") "govern how drugs may be marketed; they do not govern whether federal healthcare programs will reimburse for the drugs, as prescribed for particular patients." U.S. Br. as Intervenor and Amicus, *U.S. ex rel. Penelow v. Janssen Products*, No-25-1818, Dkt. 56 at 15 (3d Cir. Aug. 27, 2025) ("U.S. Br.").[5] Therefore, a "finding that a company has marketed its drugs for off-label use is not, without

---

[4] Dkt. 321 at 12 (setting out the elements of Plaintiffs' claims in granting NNI's motion to dismiss); Dkt. 537 at 30 (Plaintiffs' instruction on the elements, including falsity, that they must prove by a preponderance of the evidence).

[5] The United States initially declined intervention in the case but then moved to intervene when the case got to the Third Circuit to address certain constitutional issues in the appeal. The United States also submitted briefing as an amicus to advise the Third Circuit "that the district court appears, both in its jury instructions and in its post-trial order, to have misapprehended the relationship between the approval of a drug by the Food and Drug Administration (FDA) and the reimbursability by federal healthcare programs of a claim for that drug." U.S. Br. at 2.

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

3

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

more, sufficient to find that subsequent claims for the marketed drugs are false within the meaning of the False Claims Act." *Id.* at 37. Instead, to prove the "falsity" element of the off-label promotion claim, Plaintiffs must prove a claim that is not reimbursable by Washington Medicaid; nothing less will suffice because "what makes the claim false [is] its nonreimbursability." *Id.*[6]

Numerous courts have reached this conclusion in cases alleging off-label promotion as a basis for an FCA violation.[7] NNI is not aware of any court that has treated claims for off-label uses as presumptively false based solely on evidence of the defendant's off-label promotion or has approved Plaintiffs' proposed burden-shifting.

Plaintiffs concede that they have the burden to "prove, by a preponderance of the evidence," the submission of claims that were "false or fraudulent." Dkt. 537 at 30. And they acknowledge that falsity is a predicate for other elements of their claim.[8] But their proposed

---

[6] DOJ has "repeatedly articulated this understanding of the law." U.S. Br. at 37 (citing U.S. Amicus Br., *U.S. ex rel. Solis v. Millennium Pharms., Inc*., Nos. 15-16953, 15-17055, 15-17057, 2016 WL 6833796, at *12 n.4 (9th Cir. Nov. 17, 2016)); *see also* U.S. Amicus Br., *Petratos v. Genentech Inc*., No. 15-3805, 2016 WL 3012033, at *26 (3d Cir. May 23, 2016).

[7] *See*, *e.g.*, *U.S. ex rel. Solis v. Millennium Pharms., Inc.,* 445 F. Supp. 3d 786, 798 (E.D. Cal. 2020) ("[W]hether a use is on- or off-label is not dispositive of whether Medicare properly reimburses providers in any event; the salient issue is instead whether treatment is 'reasonable and necessary for the diagnosis or treatment' of an illness."), *aff'd sub nom. Solis v. Millennium Pharms., Inc*., 852 F. App'x 298 (9th Cir. 2021); *U.S. ex rel. Worsfold v. Pfizer*, 2013 WL 6195790, at *3-4 (D. Mass. Nov. 22, 2013) ("Whether a claim for payment is 'false' for purposes of liability under the FCA, in the off-label promotion context, turns on whether the claim is reimbursable under the relevant federal program, i.e. Medicaid or Medicare."); *U.S. ex rel. Banigan v. Organon USA, Inc.*, 883 F. Supp. 2d 277, 294 (D. Mass. 2012) ("[I]f a state chooses to reimburse a claim for a drug prescribed for off-label use, then that claim is not 'false or fraudulent,' and liability cannot therefore attach for reimbursement"), *rev'd on other grounds sub nom. U.S. ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134 (1st Cir. 2020); *U.S. ex rel. Hearell v. Allergan*, 2024 WL 1676209, at *4 (E.D. Tex. April 18, 2024) (dismissing FCA claims based on off-label promotion because relator failed to allege that defendant "falsely certified compliance with Medicaid or Medicare by submitting a claim for a treatment that was not 'reasonable and necessary'").

[8] *See*, *e.g.*, Dkt. 537 at 30 (defining elements of an FCA claim as including a claim that was "false or fraudulent"; knowledge that the claim was "false or fraudulent" at the time the claim was submitted; "falsity" that was material to the Government's decision; and a "false" claim that caused the Government to pay out monies it did not owe).

---

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

4

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

instruction #16 nevertheless improperly tries to shift the burden onto NNI to prove the claims were *not* false—*i.e.*, that the off-label use was "medically accepted and was medically necessary for the specific patient." Dkt. 538 at 29. The only source Plaintiffs cite for their position is Chapter 15, § 50.4.2 of the Medicare Benefit Policy Manual.[9] That section simply confirms that Medicare may cover off-label uses that are medically accepted:

> FDA approved drugs used for indications other than what is indicated on the official label may be covered under Medicare if the carrier determines the use to be medically accepted, taking into consideration the major drug compendia, authoritative medical literature and/or accepted standards of medical practice.

Far from supporting burden-shifting, this provision shows that Medicare does *not* take off-label promotion into account when deciding whether to cover a claim for an off-label use.

Neither does Washington Medicaid. Washington Medicaid covers off-label uses that are medically accepted and medically necessary for a specific patient.[10] Because Plaintiffs bear the burden of proving falsity for their FCA claims, to prevail on their FCA claim based on alleged off-label promotion they must prove the submission of claims that were not reimbursable because they were not medically accepted and/or not medically necessary for a specific patient, which Plaintiffs agree is "a patient specific determination." Dkt. 514 at 5; Dkt. 433 at 21 ("Medical necessity for an individual patient is to be determined by a jury.").

**(2) The Court Should Clarify Before Trial That Plaintiffs Cannot Establish Falsity Based on Alleged Off-Label Promotion Through Their Implied or Express False Certification Theories.**

Plaintiffs' trial brief suggests at least two other ways that Plaintiffs may try to shirk their burden of proving that claims were not reimbursable as required to establish falsity for their off-label promotion claim. Plaintiffs did not articulate either of these theories to defend against NNI's motion for summary judgment. So this is the Court's first opportunity to instruct Plaintiffs that

---

[9] Plaintiffs neither included this on their trial exhibit list nor referred to it in their summary judgment briefing.

[10] *See* WAC §§ 182-530-1000; 182-530-2000(1)(a)(ii); 182-530-1000(2)(e).

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

5

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

neither is a viable alternative to proving falsity for FCA claims based on alleged off-label promotion.

*First*, Plaintiffs say they can use an "implied false certification" theory to prove that all off-label claims for NovoSeven® were false because they were "statutorily ineligible for reimbursement." Dkt. 535 at 12.[11] But no statute makes claims for the off-label use of NovoSeven® ineligible for reimbursement under Washington Medicaid. Instead, claims for off-label use of NovoSeven® are eligible for reimbursement if the use is medically accepted and medically necessary for the particular patient. That is precisely why Plaintiffs must prove claims that were *not* for a medically accepted and/or medically necessary use to carry their burden on falsity. *See* Section I(B)(1), *supra*. Plaintiffs' suggestion that they only need to show that NovoSeven® "was generally not appropriate" for off-label use, Dkt. 535 at 13, is just another attempt to obtain a presumption of falsity and place the burden on NNI to prove specific claims were *not* false.

*Second*, Plaintiffs say that they will "prove the falsity of *all* the off-label claims through an *express false certification* theory" based on annual certifications of compliance in connection with the Corporate Integrity Agreement ("CIA").[12] Dkt. 535 at 13-14 (emphasis added). But Ninth Circuit law is clear that an "express false certification" claim can be brought only for a certification made "'as part of the process through which the claim for payment is submitted.'" *U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (2019). Plaintiffs have characterized the CIA

---

[11] Plaintiffs' implied false certification theory is also predicated on the assertion that "anyone who submits a claim to the government impliedly certifies compliance with all conditions of payment." Dkt. 535 at 12 n.12 (citing *U.S. ex rel. Brown v. Celgene*, 226 F. Supp. 3d 1032, 1044 (C.D. Cal. 2016) (analyzing eligibility for reimbursement where both parties agreed that the at-issue off-label use was not medically accepted)). But the conditions of payment for the Washington Medicaid claims at issue are medical acceptance and necessity; Plaintiffs bear the burden to prove claims that do not satisfy those conditions of payment under the theory they espouse.

[12] As this Court knows, NNI has argued that the CIA should be entirely excluded. Plaintiffs' response was that it was admissible to show scienter but their trial brief shows that they do not intend to limit their use of the CIA that way.

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

6

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

certifications as "annual certifications," Dkt. 535 at 14, and have never alleged that NNI's certifications were part of the process of submitting claims to Washington Medicaid (or Medicare).[13] Compliance with the CIA is also not a "condition of payment" under Medicare or Washington Medicaid.[14]

Notably, Plaintiffs' proposed jury instructions do not instruct on the implied or express false certification theory of falsity (neither do NNI's). Ten years from the filing of this case, five years after its unsealing, and just three weeks before trial, Plaintiffs should not be permitted to recast their claims as arising under these two new and legally unviable theories.

## II. BOTH THE AKS AND OFF-LABEL THEORIES REQUIRE PROOF OF BUT-FOR CAUSATION

### A. The AKS's "Resulting from" Language Requires But-for Causation

Claims "resulting from" AKS violations are false. 42 U.S.C. § 1320a-7b(g). Plaintiffs' trial brief indicates that they will advance a falsity theory for their AKS-based claims premised on "resulting from." Dkt. 535 at 6. Yet in their proposed jury instructions, Plaintiffs assert that claims are "false" where they are "tainted" by "benefits or payments" that violated the AKS. Dkt. 538 at 21. In its summary judgment order, the Court did not adopt a standard for applying "resulting from." Dkt. 509 at 22 (explaining that the Court "need not" decide the issue).[15] Accordingly, NNI offers this supplemental briefing to inform the Court's decision-making on this important issue so that all Parties can prepare for trial with an understanding of what "resulting from" means.

---

[13] Plaintiffs referred to the CIA certifications in their Third Amended Complaint but never alleged any facts to show that these were express certifications in a claim for payment. Nor did they allege facts to show where any government payer conditioned payment of NovoSeven® on CIA certifications. *See* Dkt. 270 ¶¶ 206-08.

[14] *See* Dkt. 521 at 30-32 (explaining why there "is *no* link between the CIA certifications and any claim for payment by Medicare or Medicaid").

[15] In their trial brief, Plaintiffs cite the Court's summary judgment opinion at pages eight to nine to suggest that the Court "has already held that, to prove liability under the AKS, Plaintiffs are not required to show that a kickback affected a doctor's prescribing decisions." Dkt. 535 at 7 (citing *United States v. Novo Nordisk, Inc.*, 2025 WL 2223439, at *8-9 (W.D. Wash. Aug. 5, 2025)). The Court never held that. *Novo Nordisk*, 2025 WL 2223439, at *8-9.

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

7

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

***The correct interpretation of "resulting from."*** The statutory language "resulting from," which links AKS violations to FCA liability, requires "but-for" causation. That is, the AKS violation must have been the but-for cause of the claim for payment. Outside the AKS context, the Supreme Court in *Burrage* interpreted nearly identical statutory text—"results from." *Burrage v. United States*, 571 U.S. 204, 210-12 (2014). The Court explained that "results from" "requires proof that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 211 (cleaned up). "[C]ourts regularly read phrases like 'results from' to require but-for causality." *Id.* at 212.

Applying *Burrage*, three Circuits—the First, Sixth, and Eighth—have determined unequivocally that the AKS's "resulting from" language requires but-for causation. *United States v. Regeneron Pharms., Inc.*, 128 F.4th 324, 326 (1st Cir. 2025); *U.S. ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1052-53 (6th Cir. 2023); *U.S. ex rel. Cairns v. D.S. Med. L.L.C.*, 42 F.4th 828, 834 (8th Cir. 2022). And in *Sayeed*, the Seventh Circuit considered "resulting from" but declined to decide whether that language requires a but-for relationship. *Stop Ill. Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 909 (7th Cir. 2024). Still, the court provided guidance on the subject: "resulting from" demands "some causal nexus between the allegedly false claims and the underlying kickback violation"—"It is not enough to show that a defendant both engaged in unlawful kickbacks and submitted false claims. The latter must 'result from' the former." *Id.* at 908 (cleaned up). And in *Wilkerson*, the Northern District of Illinois earlier this year closely examined *Sayeed*. *U.S. ex rel. Wilkerson v. Allergan Ltd.*, 782 F. Supp. 3d 658, 674-76 (N.D. Ill. 2025). The *Wilkerson* court explained that the "Seventh Circuit was clear that 'resulting from' requires some level of 'actual causality'"—indeed, "in light of *Sayeed*'s guidance, . . . but-for causation is required." *Id.* at 674, 676.

Neither the Ninth Circuit nor any court in the Western District of Washington has addressed the "resulting from" language. Dkt. 509 at 21. Yet the Ninth Circuit should and likely would adopt but-for causation. Indeed, even *before Burrage*, the Ninth Circuit interpreted the

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

8

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

phrase "results from," in a different statute, to demand showing "[c]ause-in-fact." *United States v. Houston*, 406 F.3d 1121, 1125 (9th Cir. 2005). And "cause-in-fact" means "but-for" causation. *Chaudhry v. Aragón*, 68 F.4th 1161, 1169 n.11 (9th Cir. 2023) ("A defendant's conduct is an actual cause, or cause-in-fact, of a plaintiff's injury only if the injury would not have occurred but for that conduct." (cleaned up)).

Plaintiffs may contend that the but-for standard is too high a burden. Yet such an argument cannot contravene the plain text of the statute—"courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Besides, far from being an unduly high standard, but-for causation is the "*minimum* concept of cause." *United States v. Hatfield*, 591 F.3d 945, 948 (7th Cir. 2010) (Posner, J.) (emphasis added); *see also United States v. Ortiz-Carrasco*, 863 F.3d 1, 5 (1st Cir. 2017) ("But-for cause is 'the minimum requirement for a finding of causation.'" (emphasis in original)). Indeed, "but-for causation is not nearly the insuperable barrier the Government makes it out to be." *Burrage*, 571 U.S. at 217. It "still leaves plenty of room to target genuine corruption." *Martin*, 63 F.4th at 1055. Evidence of but-for causation could include, among other things, (1) patient or expert testimony that no legitimate rationale explains a prescription or (2) documents reflecting that a doctor expressly conditioned a prescription recommendation for a particular patient on monetary payment.

Resisting the but-for standard in their trial brief, Plaintiffs cite two cases—*Parikh* and *Teva*—to urge that proving an AKS violation does not require proving that a kickback resulted in any "'particular referral.'" Dkt. 535 at 6-7 (citing *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654 (S.D. Tex. 2013) & *United States v. Teva Pharms. USA, Inc.*, 2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019)). Yet NNI does not argue and has never argued otherwise. "Resulting from," after all, does not pertain to whether an AKS violation or any referral occurred. Instead, that language governs when an AKS violation can yield *False Claims Act* liability. To get to FCA

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

9

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

liability via the "resulting from" language, plaintiffs must show that *claims*—not any "particular referral"—resulted from AKS violations. 42 U.S.C. § 1320a-7b(g).[16]

***The Third Circuit's incorrect approach.***  All three Circuits that have adopted but-for causation have also explicitly rejected the position of the Third Circuit, the *only* Circuit that has rejected the but-for standard.  In *Greenfield*, the Third Circuit adopted the "link" standard, which requires plaintiffs to show, "at a minimum," that the patients for whom at-issue claims were submitted were "exposed to" the "recommendation or referral" made in violation of the AKS. *U.S. ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 100 (3d Cir. 2018).

"*Greenfield* is not persuasive." *Wilkerson*, 782 F. Supp. 3d at 675.  For starters, *Greenfield*'s "link" standard is not causal at all, even though "resulting from" is "unambiguously causal." *Cairns*, 42 F.4th at 836.  Further, in arriving at an interpretation of "resulting from" that flies in the face of the statute's text, the Third Circuit relied almost exclusively on legislative history. *Greenfield*, 880 F.3d at 96-97.  Yet "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018); *see also United States v. Trans-Mo. Freight Ass'n*, 166 U.S. 290, 318 (1897) ("[D]ebates in [C]ongress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body.").  In short, the Third Circuit's reasoning is fatally flawed.  That is why "[a]ll the other Circuits to directly address the question point in one direction—holding that 'resulting from' requires but-for causation." *Wilkerson*, 782 F. Supp. 3d at 676.[17]

---

[16] To evade but-for causation, Plaintiffs' trial brief also cites *Bawduniak v. Biogen Idec, Inc.*, 2018 WL 1996829 (D. Mass. Apr. 27, 2018) and *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 2021 WL 101193 (D. Minn. Jan. 12, 2012). Dkt. 535 at 6 n.6, 8 n.7.  Those unpublished decisions, from the Districts of Massachusetts and Minnesota, respectively, are not good law on "resulting from" to the extent the decisions conflict with the but-for causation standard subsequently adopted by the First and Eighth Circuits. *See Regeneron Pharms., Inc.*, 128 F.4th at 326; *Cairns*, 42 F.4th at 834-35.

[17] In their trial brief, Plaintiffs cite only one case, from within the Ninth Circuit, that purportedly supports the "link" standard. Dkt. 535 at 6 n.6 (citing *Kuzma v. N. Ariz. Healthcare Corp.*, 607 F. Supp. 3d 942, 957 (D. Ariz. 2022)).  Yet when the *Kuzma* court considered "resulting from," the

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

10

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

***Plaintiffs' "tainted" standard.*** Plaintiffs' proposed jury instructions tellingly cite no cases to support their "tainted" interpretation of "resulting from." Dkt. 538 at 21, 23. And addressing "resulting from" in their trial brief, Plaintiffs refer to the "taint" interpretation only once, quoting an opinion in the *Celgene* case for the idea that the government would not "'pay for claims tainted by kickbacks.'" Dkt. 535 at 6 (quoting *U.S. ex rel. Brown v. Celgene Corp.*, 2014 WL 3605896, at *7 (C.D. Cal. July 10, 2014)). Yet there, the *Celgene* court was not articulating any standard for understanding "resulting from." Instead, the court was merely explaining the rationale underlying that language: "Because the government would not knowingly reimburse kickback-tainted claims, any claims resulting from Celgene's alleged kickbacks constitute false claims." *Celgene*, 2014 WL 3605896, at *8.

Plaintiffs never say what their "taint" standard requires. Perhaps Plaintiffs mean that if a doctor receives illegal kickbacks for a period, then all her prescriptions for that period are tainted (such that claims for those prescriptions are false). Yet even *Greenfield*—adopting the loose "link" standard—rejected that notion: "It is not enough . . . to show temporal proximity between . . . alleged kickback[s] . . . and the submission of claims for reimbursement." *Greenfield*, 880 F.3d at 100. Or perhaps Plaintiffs mean that prescriptions *following* the kickback are "tainted" (and therefore render underlying claims false). Yet even *Sayeed*, declining to join the Circuit split, spurned that position: "Th[e] broad suggestion that . . . every claim for payment following an anti-kickback violation is automatically false . . . is inconsistent with [the "resulting from" provision's] directive." *Sayeed*, 100 F.4th at 909.

For the Parties to complete their trial preparations adequately, the Court should clarify that "resulting from" requires that the AKS violation be the but-for cause of the claim.

---

Third Circuit was the only Circuit that had evaluated that language. *Kuzma* (June 15, 2022) predates *Cairns* (July 26, 2022), *Martin* (March 28, 2023), and *Regeneron* (February 18, 2025).

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

11

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

### B. In the Off-Label Promotion Context, the FCA's Causation Element Requires at Least But-for Causation

The FCA targets not only a defendant that presents false claims, but also a defendant that "*causes*" false claims "to be presented." 31 U.S.C. § 3729(a)(1)(A) (emphasis added). Here, Plaintiffs theorize that NNI caused presentment of false claims via off-label promotion. Dkt. 438 at 16. In their proposed jury instructions, Plaintiffs suggest that they may prove the FCA's causation element by proving that claims for payment were "impacted" by off-label promotion. Dkt. 538 at 21, 23. Plaintiffs do not cite—and NNI is unaware of—any FCA case that has ever adopted an "impacted" standard for off-label causation. It is completely unclear, moreover, what that novel standard would require. The Parties need clarity on the proper standard in order to put on their cases.

**(1) Proving Off-Label Causation Requires Proving But-for Causation.**

As to the off-label theory, the FCA's causation element requires *at least* but-for causation—the off-label promotion must have been the but-for cause of the claim. The FCA does not define "causes." "When a statutory provision includes an undefined causation requirement, we look to context to decide whether the statute demands *only but-for* cause as opposed to proximate cause or sole cause." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 769 (2018) (emphasis added). After all, there "is a difference between 'but for' causation and the causation—for which the presence of **but-for** causation is ordinarily a necessary condition but rarely a sufficient one—that imposes legal liability. The distinction runs throughout the law." *United States v. Hicks*, 217 F.3d 1038, 1049 (9th Cir. 2000) (cleaned up) (emphasis in original) (quoting *United States v. Marlatt*, 24 F.3d 1005, 1007 (7th Cir. 1994)); *United States v. Olis*, 429 F.3d 540, 546 (5th Cir. 2005) (same). In other words, but-for causation is the irreducible "minimum" of causation. *Hatfield*, 591 F.3d at 948.

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

12

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

Consistent with that foundational rule, three Circuits have addressed the appropriate causation standard in FCA off-label promotion cases—and all three have adopted but-for causation.

***First and Eleventh Circuits.*** In *Booker*, the First Circuit terminated an FCA theory premised on off-label promotion because the relators had no evidence of an "'actual false claim'" that "had resulted from any [off-label] promotion." *U.S. ex rel. Booker v. Pfizer*, 847 F.3d 52, 57 (1st Cir. 2017). Similarly, in *Keeler*, the Eleventh Circuit short-circuited an off-label promotion theory because the relator identified no off-label claims submitted "as a result of" the off-label promotion scheme. *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 796 (11th Cir. 2014). Such standards demand but-for causation. Indeed, explaining that a "thing 'results' when it arises as an effect, issue, or outcome *from* some action," the Supreme Court has held that the "ordinary meaning" of "phrases like 'results from'" is "but-for causality." *Burrage*, 571 U.S. at 210-12 (cleaned up) (emphasis in original).

***Fifth Circuit.*** In *Solvay*, the Fifth Circuit ended an off-label promotion theory of FCA liability because the relator did not have evidence that "off-label marketing *actually caused* off-label prescriptions . . . resulting in false claims to the government." *U.S. ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 329 (5th Cir. 2017) (emphasis added). "Actual cause" means but-for causation. *Actual cause*, BLACK'S LAW DICTIONARY (12th ed. 2024).

**(2) The "Substantial Factor" Standard Is Inappropriate Here.**

Despite pushing the nebulous "impacted" standard in their proposed jury instructions, Plaintiffs' trial brief advances the "substantial factor" test, which focuses in part on foreseeability. Dkt. 535 at 14.

NNI agrees that FCA causation has a foreseeability requirement, but that requirement is *in addition to* but-for causation (again, but-for causation is the floor, not the ceiling). *See Husted*, 584 U.S. at 769; *see also Hicks*, 217 F.3d at 1049. Yet Plaintiffs apparently resist that well-established

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

13

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

rule in pushing a substantial factor test.[18] Doing so, their trial brief first cites *U.S. ex rel. Schmidt v. Zimmer*, 386 F.3d 235 (3d Cir. 2004). Dkt. 535 at 14. Unlike *Booker*, *Keeler*, and *Solvay*, however, *Schmidt* is more than two decades old. Further, *Schmidt* is a kickback case that had nothing to do with off-label promotion. *Schmidt*, 386 F.3d at 238. And interpreting the FCA's causation element, *Zimmer* applied "principles from negligence law." *Id.* at 244. Yet negligence principles simply do not fit with the FCA, a "punitive" anti-fraud statute imposing treble damages and per-claim penalties. 31 U.S.C. § 3729(a)(1); *Cook Cty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 120 (2003). Consistent with that, the Ninth Circuit has repeatedly held that under the FCA, "mere negligence" cannot suffice. *United States v. Chen*, 402 F. App'x 185, 187 (9th Cir. 2010) (internal quotation marks omitted); *United States v. Bourseau*, 531 F.3d 1159, 1167 (9th Cir. 2008) (internal quotation marks omitted); *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1074 (9th Cir. 1998).

Next, Plaintiffs' trial brief cites *Franklin I* and *Franklin II*, older cases from the District of Massachusetts. *U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.*, 147 F. Supp. 2d 39 (D. Mass. 2001); *U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.*, 2003 WL 22048255 (D. Mass. Aug. 22, 2003). Yet to the extent those cases conflict with the but-for standard subsequently articulated by the First Circuit in *Booker*, they are not good law.

Finally, Plaintiffs' trial brief cites *Celgene* and *Colquitt* for the notion that proof of a systematic off-label promotion scheme "will suffice to establish causation"—such that proof on a claim-by-claim basis is not required. Dkt. 535 at 14-15. Yet Plaintiffs explicitly concede that both cases concern summary judgment—*i.e.*, the evidence "required for claims to *go* to a jury," *not* the evidence required *to be presented to a jury* at trial. *Id.* at 15 (emphasis added). Further, proving a "systematic" underlying scheme by itself establishes *nothing* under the FCA, let alone off-label

---

[18] Despite Plaintiffs' apparent implication to the contrary, Dkt. 535 at 16, this Court never rejected actual/but-for causation at summary judgment. Instead, the Court held that there was sufficient evidence both that NNI's conduct "caused" prescriptions and that resulting claims for payment were "foreseeable." Dkt. 509 at 15.

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

14

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

causation: "The False Claims Act . . . focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002). After all, the FCA "attaches liability, not to underlying fraudulent activity, but to the 'claim for payment.'" *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).

Thus, at trial, proof on a claim-by-claim basis *is* required. Plaintiffs "must show '*an actual false claim*'"—the "'*sine qua non* of a False Claims Act violation.'" *Kitsap*, 314 F.3d at 1002 (emphases in original). Indeed, in the off-label context, "aggregate data" do not suffice; Plaintiffs need to show the *specifics* of the "actual false claim," including the "specific entities who submitted claims," the "time period, location, and amount of the claim, and the specific government program to which the claim was made." *Booker*, 847 F.3d at 58 (cleaned up); *see also U.S. ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 440 (3d Cir. 2004) (requiring "proof of an actual claim").[19]

The Court should instruct the jury that to prove their off-label promotion theory, Plaintiffs must prove—on a claim-by-claim basis—that NNI's off-label promotion was the but-for cause of the claim, and that proof of an underlying off-label promotion scheme does not suffice to satisfy causation.

---

[19] Addressing the off-label theory in the past, Plaintiffs have conceded that, even if claim-by-claim proof is not required, proof must at least go patient-by-patient. According to Plaintiffs, "[m]edical necessity is, necessarily, a patient-specific determination"—"[m]edical necessity *for any individual patient* is to be determined by a jury." Dkt. 514 at 5; Dkt. 434 at 21 (emphasis added). Indeed, in the *Penelow* FCA matter, which involves an off-label promotion theory, DOJ's amicus brief indicates that whether a medicine is eligible for reimbursement by Medicare hinges on whether the drug is reasonable and necessary "for the *individual patient*." U.S. Br. at 49 (emphasis added).

DEFENDANT'S SUPPLEMENTAL  
MEMORANDUM ON JURY INSTRUCTIONS  
Case No. 3:23-cv-05459-BHS

15

SIDLEY AUSTIN LLP  
One South Dearborn Street  
Chicago, IL 60603  
Tel: (312) 853-7000

Dated: October 1, 2025

Respectfully submitted,

By: */s/ Jaime L.M. Jones*
Jaime L.M. Jones (*pro hac vice*)
Matthew Bergs (*pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
jaime.jones@sidley.com
mbergs@sidley.com

Mark P. Guerrera (*pro hac vice*)
Jennifer L. Saulino (*pro hac vice*)
Sidley Austin LLP
1501 K Street, NW
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
mguerrera@sidley.com
jennifer.saulino@sidley.com

By: /s/ *John Wolfe*
John Wolfe (WSBA# 8028)
Aaron Brecher (WSBA# 47212)
Orrick Herrington & Sutcliffe LLP
wolfe@orrick.com
abrecher@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98104-7097
Telephone: (206) 839-4332
Facsimile: (206) 839-4301

*Attorneys for Defendant Novo Nordisk Inc.*

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM ON JURY INSTRUCTIONS
Case No. 3:23-cv-05459-BHS

16

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000