The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　　Plaintiffs,<br>　　　　　　　*Ex rel*.<br><br>JAMIE SIEGEL, M.D.,<br><br>　　　　　　　Plaintiff-Relator,<br><br>　　v.<br><br>NOVO NORDISK INC.,<br><br>　　　　　　　Defendant. | No. 3:23-cv-05459-BHS<br><br>**JOINT SUBMISSION ON THE LEGAL MEANING OF A "CLAIM" FOR PAYMENT BY MEDICARE/MEDICAID** |

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

1

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

As ordered by the Court at the October 14, 2025 Continued Pre-Trial Conference, the Parties, Plaintiff State of Washington ("Washington" or "the State"), Plaintiff-Relator Jamie Siegel, M.D. ("Relator" or, together with Washington, "Plaintiffs"), and Defendant Novo Nordisk Inc. ("NNI"), respectfully submit this joint submission addressing how the claims in this case should be counted and whether the question is one of law or fact.

## Defendant Novo Nordisk Inc.'s Position

### I. "Claims" Are Requests Submitted to Medicare or Medicaid for Reimbursement and Not Individual Line Items in Those Requests

Both the FCA and the WFCA define the term "claim," in relevant part, as a "request or demand" for "money." 31 U.S.C. § 3729(b)(2)(A); RCW 74.66.010(1)(a); *see also* Dkt. 538 at 50, 86 (Plaintiffs' proposed jury instructions defining "claim" under the FCA and WFCA, in relevant part, as a "request or demand" for "money").

In the Medicare/Medicaid context, courts hold that the "request or demand" for money is the claim form seeking reimbursement, not the line items on that claim form listing the individual items or services provided. To request NovoSeven® reimbursement from Washington Medicaid or Medicare Part B, healthcare providers submit CMS-1500 forms.[1] To complete the forms, healthcare providers must use codes to record a line item for each item (such as a medication), procedure, or service provided to the patient. Thus, a single 1500 form may request reimbursement for one or more vials of NovoSeven® and other medicines, procedures, or services provided. Here, Plaintiffs argue that every individual line entry for NovoSeven® is a claim. Plaintiffs are wrong. Every court of which NNI is aware agrees with NNI that the "claim" is the 1500 form (or electronic submission of the same data), *not* the individual line items.

---

[1] CENTERS FOR MEDICARE AND MEDICAID SERVICES, *CMS 1500*, https://www.cms.gov/medicare/cms-forms/cms-forms/downloads/cms1500.pdf.

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

2

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

*United States v. Krizek*, 111 F.3d 934 (D.C. Cir. 1997) is the seminal case on point. To determine whether the 1500 form[2] or each line item constituted an FCA "claim," the court asked the following: "'With what act did the defendant submit his demand or request and how many such acts were there?'" *Krizek*, 111 F.3d at 939. After thoroughly examining Supreme Court guidance, the court answered that the defendants made a "claim" "every time they submitted" one of the forms requesting payment. *Id.* at 939–40 (discussing *United States v. Bornstein*, 423 U.S. 303 (1976) and *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537 (1943), *superseded in part on other grounds*, *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 412 (2011)). In so holding, the court squarely rejected the lower court's position—precisely the one Plaintiffs advance here—that each code or line item on the 1500 form constituted a "claim." *Id.* at 939–40. That makes sense, according to *Krizek*, because the line items are "totaled to produce *one* request or demand" for money—one "claim." *Id.* at 940 (emphasis added). *Krizek*'s analysis is also utterly consistent with this Court's observation that where, for example, a patient sees the same doctor four separate times, there may still be only "one bill"—if all the visits are "presented in one bill." Oct. 14, 2025 Hr'g Tr. (rough) at 30:25–31:3.[3]

NNI has identified no case that disagrees with *Krizek* that it is the 1500 form, and not individual line items, that is the "claim" under the FCA. To the contrary, courts analyzing how to count claims in the Medicare/Medicaid context have consistently followed *Krizek*'s rule:

- *U.S. ex rel. Simpson v. Bayer Corp.*, 376 F. Supp. 3d 392, 402–03 (D.N.J. 2019) (in the Medicare and Medicaid context, "the 'claim' for purposes of FCA liability was the form submitted for payment")

- *U.S. ex rel. Bahnsen v. Boston Sci. Neuromodulation Corp.*, 2018 WL 4604307, at *4 (D.N.J. Sept. 24, 2018) (concluding in the Medicare context that the "Form 1500

---

[2] *Krizek* analyzed the legacy version of the CMS-1500 form, the HCFA-1500. *Krizek*, 111 F.3d at 936.

[3] Only the rough transcript of the October 14, 2025 hearing is available as of this filing. NNI will provide the transcript to the Court as soon as it is available.

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

3

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

represents a claim, regardless of the number of diagnostic codes or line entries included on each form") (citing *Krizek*)

- *United States v. Dynamic Visions, Inc.*, 282 F. Supp. 3d 257, 262 (D.D.C. 2017) (finding in the Medicaid context that there were 47 claims because there were 47 separate and distinct "submitted demands for payment" and rejecting the notion that documents included *within* those 47 submitted demands could constitute additional "claims") (citing *Krizek*), *vacated in part on other grounds*, 971 F.3d 330 (D.C. Cir. 2020)

- *United States v. Speqtrum, Inc.*, 2016 WL 5349196, at *4 (D.D.C. Sept. 23, 2016) (holding that each separate submitted Medicaid reimbursement form was a "claim" and rejecting the view that each of the form's line items represented a "claim") (citing *Krizek*)

- *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 386 (4th Cir. 2015) (for purposes of FCA liability, the "claim" was the submitted Medicare form "asking for reimbursement")

- *Cantrell v. N.Y. Univ.*, 326 F. Supp. 2d 468, 469–470 (S.D.N.Y. 2004) (explaining in the Medicare context that "each invoice, *rather than each line item* on an invoice," may constitute a false claim (emphasis added)) (citing *Krizek*)

- *Hays v. Hoffman*, 325 F.3d 982, 993–94 (8th Cir. 2003) (concluding there were "clearly eight false claims for FCA purposes" where eight facilities requested Medicaid reimbursement and rejecting "as a matter of law" an alternative method for counting claims) (citing *Krizek*)

*Krizek* and its progeny are consistent with the plain meaning of a "claim" under the FCA. This approach to counting requests for total payment and not individual line items or component charges is therefore followed even outside the Medicare/Medicaid context. *See*, *e.g.*, *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 114 Fed. Cl. 258, 319 (2013) (adopting *Krizek* and

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

4

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

1  finding that "[w]hen a fraudulent claim consists of multiple components, the submission of an
2  aggregate claim, rather than its individual components, is the act that creates liability under the
3  False Claims Act"); *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 2010 WL 3730894, at
4  *4–5 (D. Colo. Sept. 16, 2010) (adopting *Krizek* and holding that each "consolidated form
5  submitted by the Defendant" was *one* "claim"—the forms "aggregate[d] a large volume of data,
6  but ultimately reduce[d] down to a single 'Net Payment' field for each form.").

7  **II.    Ninth Circuit Precedent Is Consistent with Counting Claims and Not Line Items**

8        Although the Ninth Circuit has not squarely addressed how to count claims in the
9  Medicare/Medicaid context, *Krizek* relied in part on long-standing Ninth Circuit precedent—
10 *United States v. Woodbury*, 359 F.2d 370 (9th Cir. 1966) (discussed at *Krizek*, 111 F.3d at 939).
11 In *Woodbury*, the Ninth Circuit considered how to count claims in the context of applications for
12 payment that attached multiple "false" invoices used to calculate the total amount requested in the
13 application. *Woodbury*, 359 F.2d at 377–78. *Woodbury* held that each individual charge attached
14 to the application was *not* a separate "claim"; instead, each application requesting payment was a
15 "claim" for purposes of the FCA. *Id.*; *see also United States v. Nat'l Wholesalers*, 236 F.2d 944,
16 950 (9th Cir. 1956) (concluding that the number of claims hinged on the number of voucher
17 submissions requesting payment, not the number of false documents contained in the submissions).

18       The Ninth Circuit has continued to follow *Woodbury* when confronted with questions about
19 how to count claims for purposes of imposing penalties under the FCA. For example, in *Hendrix*
20 *ex rel. U.S. v. J-M Mf. Co.*, 76 F.4th 1164, 1168, 1172 (9th Cir. 2023), the Ninth Circuit rejected
21 the argument that a penalty should be imposed for each piece of noncompliant pipe billed to the
22 government in a series of projects for which the defendant submitted successful bids. The court
23 observed that "when determining penalties for false claims associated with goods, courts applying
24 the federal FCA have awarded penalties based on the number of contracts or invoices *but not on*
25 *each good*." *Hendrix*, 76 F.4th at 1173 (emphasis added). Citing *Woodbury*, the court imposed

28 JOINT SUBMISSION ON THE LEGAL             5            SIDLEY AUSTIN LLP
MEANING OF A "CLAIM" FOR PAYMENT                           One South Dearborn Street
Case No. 3:23-cv-05459-BHS                                                          Chicago, IL 60603
                                                                                                          Tel: (312) 853-7000

1  one penalty per project—i.e., one for each false bid submission—and not for each noncompliant
2  pipe or false statement about such pipes. *Id.*

3  **III.     Plaintiffs' Arguments Fail**

4  In the October 14 hearing, counsel for Washington stated that what qualifies as a "claim"
5  is a fact issue for the jury. Oct. 14, 2025 Hr'g Tr. (rough) at 12:16–17. That is wrong. Courts—
6  not juries—resolve this question as a matter of law. After all, interpreting the statutes' definitions
7  of "claim"—i.e., saying what the law is—is the province of judges. In the hearing, Plaintiffs
8  identified no case in which any court imposed upon a jury the burden of deciding what the legal
9  term "claim" means in the Medicare/Medicaid context. NNI is aware of no such case.

10  During the October 14 hearing, counsel for the Relator offered two arguments for counting
11  line items as "claims," but cited no law in support. Both are wrong as a matter of law. First,
12  counsel argued that line items constitute separate claims because the government purportedly may
13  choose to pay for only some of a claim form's line items. *Id.* at 29:8–10. That argument "misses
14  the point. The question turns, not on how the government chooses to process the claim, but on
15  how many times the defendants made a 'request or demand.'" *Krizek*, 111 F.3d at 940.

16  Second, Plaintiffs argued that when "you put a line item on a piece of paper, when you
17  record it in the hospital's entry system or the provider's entry system you are making a claim."
18  Oct. 14, 2025 Hr'g Tr. (rough) at 30:4–6. This Court correctly responded that a claim "becomes
19  a claim" only when "you submit that claim." *Id.* at 30:7–8. In other words, "the claim it seems to
20  me would be when that claim was *submitted* even though it has sub claims"—"it is the *act of*
21  *submitting* that claim summary with the amount, that strikes me as being what constitutes a claim."
22  *Id.* at 31:3–7 (emphases added). As a matter of law, the Court's response was correct (in this
23  Circuit and every other): the FCA "focuses on the *submission* of a claim." *United States v. Kitsap*
24  *Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (emphasis added); *U.S. ex rel. Lissack v.*
25  *Sakura Glob. Cap. Mkts., Inc.*, 377 F.3d 145, 154 n.9 (2d Cir. 2004) (internal quotation marks
26  omitted, emphasis added). That is, the "submission of a claim is [] not . . . a 'ministerial act,' but

27
28  JOINT SUBMISSION ON THE LEGAL                                6                              SIDLEY AUSTIN LLP
    MEANING OF A "CLAIM" FOR PAYMENT                                                      One South Dearborn Street
    Case No. 3:23-cv-05459-BHS                                                                   Chicago, IL 60603
                                                                                             Tel: (312) 853-7000

the *sine qua non* of a False Claims Act violation." *U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 411–12 (6th Cir. 2016) (internal quotation marks omitted); *see also Grant on Behalf of U.S. v. Zorn*, 107 F.4th 782, 795 (8th Cir. 2024) (the "'*sine qua non*' of an FCA . . . violation is 'the act of submitting a fraudulent claim to the government'"); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (the "*sine qua non* is the presentment of a false claim.").

Plaintiffs' suggestion that a line item constitutes a "claim" conflicts with the language of the FCA and the WFCA, Ninth Circuit precedent, and relevant precedent from every other Circuit. The Court should hold as a matter of law that a "claim" in this case is the submitted form requesting reimbursement regardless of the number of line items for NovoSeven®.

**Plaintiffs' Position**

**A.    BACKGROUND**

At the October 14, 2025, conference, the Parties raised their disagreement with respect to how the "false claims" in this case should be counted. The issue is relevant to the question of penalties under the FCA. Pursuant to 31 U.S.C. § 3729(a)(1), should the jury find that NNI violated the FCA, it must determine the number of "false claims" that NNI caused to be submitted. The Court then uses that number to determine the mandatory civil penalties to impose, one for *each* false claim. *Id.*; *see also* RCW 74.66.020 (Washington FCA setting forth similar remedies).

Claims related to the administration of NovoSeven are submitted by the hospital or provider on either a UB04 or CMS-1500 form. The form will contain various "CPT" and "HCPCS" codes[4] related to the claim, including the code specific to NovoSeven, HCPCS J7189. The primary dispute between the Parties arises from the fact that the raw Medicaid and Medicare data obtained by the Plaintiffs do not just list the totals from the UB04 or CMS-1500 forms. They

---

[4] CPT codes are billing codes specific to physician services while HCPCS codes are used to charge for non-physician services, medications, medical devices, etc.

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

7

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

list each separately listed CPT and HCPCS code contained within the form. An example provided by NNI is below:



At issue are the two highlighted components in the enlarged version below:

| Claim Number | Line | From Date of Service | To Date of Service | HCPCS/Procedu |
|---|---|---|---|---|
| 342221125048460 | 2 | 16Apr2021 | 16Apr2021 | J7189 |
| 342221125048460 | 1 | 16Apr2021 | 16Apr2021 | J7189 |
| 342221125048460 | 3 | 16Apr2021 | 16Apr2021 | J7189 |

| Billed Units | Allowed Units | Billed Amount | Allowed Amount | Medicare Paid Amount |
|---|---|---|---|---|
| 9999.0000 | 9999.00 | 13281.67 | 13281.67 | 10625.34 |
| 9999.0000 | 9999.00 | 13281.67 | 13281.67 | 10625.34 |
| 3.0000 | 3.00 | 3.99 | 3.99 | 3.19 |

The example NNI provided reflects three administrations of NovoSeven given on April 16, 2021, under the same claim number, Claim No. 342221125048460. Plaintiffs contend that each line in the data that contains HCPCS J7189 reflects a separate administration of NovoSeven and is a "false claim" for purposes of FCA penalties. NNI contends that each claim number (*e.g.*, Claim No. 342221125048460) is a single false claim, regardless of how many administrations of NovoSeven are included in the form. So in the example above, Plaintiffs count three false claims while NNI counts one.

Although NNI has previously suggested that the data reflect duplicated entries, in fact, as the example they sent makes clear, lines that contain the same amount for the same date reflect the "76 Modifier,"[5] a billing term that clarifies that two charges of the same amount on the same date reflect distinct services:

---

[5] *See* https://masrcm.com/modifier-76 (modifier 76 indicates that the service was "performed again due to clinical need not as part of the original service or due to error").

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

8

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

| DIAG Line | From Date of Service | To Date of Service | HCPCS/Procedure | MolDx Test ID | HCPCS Modifier 1 | HCPCS Modifier 2 |
|---|---|---|---|---|---|---|
| D66 | 16Apr2021 | 16Apr2021 J7189 | | | 76 | ~ |
| D66 | 16Apr2021 | 16Apr2021 J7189 | | | ~ | ~ |
| D66 | 16Apr2021 | 16Apr2021 J7189 | | | 76 | ~ |

In fact, other examples of the data show one claim form (*i.e.*, a single claim number) covering administrations of NovoSeven over several days:

| Claim Number | Line | From Date of Service | To Date of Service | HCPCS/Procedure |
|---|---|---|---|---|
| 22332600528304WAA | 23 | 26Oct2023 | 26Oct2023 | J7189 |
| 22332600528304WAA | 20 | 24Oct2023 | 24Oct2023 | J7189 |
| 22332600528304WAA | 22 | 25Oct2023 | 25Oct2023 | J7189 |
| 22332600528304WAA | 21 | 25Oct2023 | 25Oct2023 | J7189 |
| 22332600528304WAA | 19 | 24Oct2023 | 24Oct2023 | J7189 |
| 22332600528304WAA | 18 | 23Oct2023 | 23Oct2023 | J7189 |

| Billed Units | Allowed Units | Billed Amount | Allowed Amount | Medicare Paid Amount |
|---|---|---|---|---|
| 12000.0000 | 12000.00 | 249.60 | 249.60 | 0.00 |
| 0.0000 | 0.00 | 41984.00 | 0.00 | 0.00 |
| 0.0000 | 0.00 | 10485.60 | 0.00 | 0.00 |
| 26000.0000 | 26000.00 | 52760.80 | 52760.80 | 0.00 |
| 26000.0000 | 26000.00 | 540.80 | 540.80 | 0.00 |
| 8000.0000 | 8000.00 | 166.40 | 166.40 | 0.00 |

Enlarged, this set is:

This set reflects six charges for NovoSeven in differing doses given over a four-day period (10/23/23 to 10/26/23) but submitted on one UB04 or CMS-1500 form. Under Plaintiffs' view, this reflects six false claims. For NNI, this would be just one claim but for the fact that these lines reflect that Medicare did not pay for any of the doses. NNI contends that these $0 entries also cannot be counted as false claims because the government suffered no loss. Plaintiffs maintain that a submitted false claim is subject to a penalty whether it is paid by the government or not.

**B.   ARGUMENT**

   **1.   *This Issue Presents Questions of Fact and Law***

As an initial matter, to respond to the Court's question, the question of how many false claims there are for purposes of penalties under the FCA is a question of fact for the jury, *see, e.g.*,

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

9

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

*Hays v. Hoffman*, 325 F.3d 982, 993 (8th Cir. 2003) (noting that "the number of false claims" is a "fact-intensive" inquiry); *United States v. Krizek*, 111 F.3d 934, 939 (D.C. Cir. 1997) ("Whether a defendant has made one false claim or many is a fact-bound inquiry that focuses on the specific conduct of the defendant."), although what constitutes a "false claim" is a question of law, *see, e.g.*, *United States v. Teva Pharms. USA, Inc.*, 682 F. Supp. 3d 142, 147 (D. Mass. 2023) (noting that "the measure of damages applicable to the government's AKS-based FCA claims" was a "question of law"); *see also Krizek*, 111 F.3d at 940 (overturning district court's definition of "claim" as a matter of law).

### 2. *Determining What are the False Claims*

At the October 14 conference, NNI cited to *Krizek*, a 1997 case in which the D.C. Circuit rejected the government's argument that in the Medicare context, the individual CPT-code entries on a HCFA 1500 form[6] were separate false claims. 111 F.3d 934, 940 (D.C. Cir. 1997). Instead, the court held, "the claim in th[e Medicare] context is the HCFA 1500 form [a]s supported by the structure of the form itself." Plaintiffs agree that what is now called the CMS-1500 form as well as the UB04 form, is a "claim" for purposes of liability under 31 U.S.C. § 3729(a)(1)(A) (the FCA's "false claim" or "presentment" prong), which was all that was at issue in *Krizek*. But Plaintiffs here have also asserted violation of the "false statement" prong of the FCA. *Id*. at § 3729(a)(1)(B). As the court in *United States ex. rel. International Brotherhood of Electrical Workers Local Union No. 8 v. Farfield Company*, explained, the FCA "'gives rise to several distinct theories of liability,'" including the "presentment" of false claims and "false statement" liability. 438 F. Supp. 3d 348, 388 (E.D. Penn. 2020). *Farfield* was a wage-and-hour FCA case arising from the defendant's misclassification of employees. Although Farfield had submitted just 40 false invoices seeking payment, the invoices were based on 105 falsely certified weekly payroll reports. The court concluded that while the 40 invoices may have been the "presentment" of false claims for payment, each of the 105 payroll reports was a material "false statement" that gave rise

---

[6] HCFA, or the Health Care Finance Administration, is the predecessor agency of CMS.

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

10

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

to a penalty. Here, too, each separate charge for the administration of NovoSeven is a separate false statement that certifies medical necessity as well as compliance with the AKS *for that specific administration*. Both false certifications are material to Medicaid and Medicare's decisions to pay the claim. *See, e.g.*, *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1122 (9th Cir. 2020) ("We conclude that a false certification of medical necessity can be material"); *United States ex rel. Macias v. Pac. Health Corp.*, CV-12-00960 RSWL-JC, 2019 WL 2396305, at *7 (C.D. Cal. June 5, 20019) (holding that "compliance with the AKS is material to the Government providing Medicare payments" and collecting cases).

Notably, *Krizek* and *Farfield* addressed different policy concerns. In *Krizek*, the actual damages were just $245,392 but the government's argument that each of the thousands of CPT codes contained in the HCFA 1500 forms was a false claim implicated "an astronomical $81 million in penalties," a grossly disproportionate result and one the defendant had no control over. 111 F.3d at 940. By contrast, in *Farfield*, at issue were 105 falsely certified payroll reports that had been rolled up into 40 invoices seeking payment. The *Farfield* court was concerned that if it were to "adopt Farfield's reasoning [that there were only 40 false claims not 105, Farfield] could limit its exposure to the statutory penalty simply by submitting fewer invoices even though those invoices are based on false statements." 438 F. Supp. 3d at 389; *see also U.S. v. Collyer Insulated Wire Co.*, 94 F. Supp. 493, 496 (D.R.I. 1950) (concluding that "if the contentions of the defendants were accepted, it would be a mockery against the intent of the [FCA] to allow the defendants to lump all their derelictions and fraudulent practices under" one violation).

Here, like *Farfield*, the difference in claim counts is not substantial: NNI has challenged a total of 736 claims out of 2,173 claims contained in Plaintiff's Exhibits 830 and 833 as improperly based on the number of lines of NovoSeven charges (J7189) billed to Medicaid and Medicare, rather than the UB04 or CMS-1500 forms containing those charges. These 736 claims represent a maximum of about $16 million in FCA civil penalties[7] in a case asserting well over $500 million

---

[7] The maximum applicable penalty is $21,562 per false claim. *See* TCC ¶ 75.

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

11

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

in treble damages and potential state penalties. *See* False Claims Act, 31 U.S.C. § 3729(a)(1) (providing for treble damages and civil penalties); Washington Medicaid Fraud False Claims Act, RCW 74.66.020 (providing for treble damages and civil penalties); Washington Fraudulent Practices Act, RCW 74.09.210(2) (providing for repayment of improperly obtained payments and, "in addition to any other penalties provided by law," up to three times the amount of excess benefits as a civil penalty imposed in the Attorney General's discretion).

Adopting NNI's position here would substantially undermine the purpose of the FCA and effectively reward NNI for the happenstance that the provider combined multiple violations into one "submitted claim." As the Supreme Court explained in the seminal case *United States v. Bornstein*, the calculation of penalties in an FCA case must "give faithful meaning to the language Congress adopted in the light of the evident legislative purpose in enacting the [FCA:] … punishing and preventing … frauds." 423 U.S. 303, 310 & n.5 (1976) (internal quotation marks omitted).

NNI also cited to *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, in which the court upheld awarding only one penalty per project, rather than for each non-compliant pipe. 76 F.4th 1164, 1172-73 (9th Cir. 2023). But the court's reasoning there is distinguishable. The court limited the number of false claims because "the … jury's finding of falsity and materiality did not mean that every stick of pipe was non-compliant. **That jury found only that J-M did not uniformly comply with industry standards and *could have* delivered *some* non-compliant pipe**. Plaintiffs did not establish how much non-compliant pipe they received nor were they able to identify any specific piece of non-compliant pipe." *Id.* (emphasis added). The cases cited in *J-M Mfg. Co.* are similarly reasoned.

> The Supreme Court has held that collusive bidding on fifty-six projects gave rise to only fifty-six FCA penalties, not one "for every form submitted by respondents in the course of their enterprise." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 552, 63 S. Ct. 379, 87 L. Ed. 443 (1943) …. Our cases are in accord. *See United States v. Woodbury*, 359 F.2d 370, 378 (9th Cir. 1966) (holding that documents attached to applications for funds do not give rise to separate penalties); *United States v. Nat'l Wholesalers*, 236 F.2d 944, 950 (9th Cir. 1956) (holding that when seventeen invoices were attached to ten vouchers for payment, "the number of claims should be computed on the number of vouchers rather than the number of

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

12

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

invoices"). Similarly, when determining penalties for false claims associated with goods, courts applying the federal FCA have awarded penalties based on the number of contracts or invoices but not on each good. *See, e.g., United States v. Bornstein*, 423 U.S. 303, 311–13, 96 S. Ct. 523, 46 L.Ed.2d 514 (1976) (awarding three penalties for three separately invoiced shipments rather than a penalty for each falsely marked tube); *see also United States v. Aerodex, Inc.*, 469 F.2d 1003, 1011 (5th Cir. 1972) (awarding a penalty for each of three invoices but not for each of the mislabeled bearings). The district court thus did not err in declining to award a statutory penalty for the stamp on each piece of pipe.

*Id*. at 1172-73 (footnotes omitted). In each of these cases, the sub-category of "claims" – actual goods or documents attached to invoices – were not proven to be entirely false or material. Here, as Plaintiffs have repeatedly argued, *every* charge for NovoSeven – *every* entry for J7189 – for those patients affected by NNI's kickback violations is a material false claim.

### *3.     $0 Claims are Still False Claims*

NNI similarly challenges another 290 claims for which Medicaid or Medicare paid nothing − the $0 claims − asserting these are not false claims. It is wrong. The law is clear that "[n]o damages need be shown in order to recover the penalty." *U.S. ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *see also Rex Trailer Co. v. United States*, 350 U.S. 148, 152-53 & n.5 (1956) (citing *Hess*, 317 U.S. 537); *Hendrix*, 76 F.4th at 1173 n.5 (collecting cases); *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 401 (4th Cir. 2013) ("[T]he court thus decided that Gosselin was entitled to a full offset, with no damages remaining payable," but "[i]t remained for the district court to calculate the appropriate civil penalties for the Bunk false claims."); *Bly-Magee v. California*, 236 F.3d 1014, 1017 (9th Cir. 2001) ("[A] qui tam plaintiff need not prove that the federal government will suffer monetary harm to state a claim under the FCA."); *In re Schimmels*, 85 F.3d 416, 419 (9th Cir. 1996) ("In addition to treble damages, the FCA requires a court to award not less than $5,000 and not more than $10,000 for each false claim or statement submitted to the government, even if no damages were caused by the false submissions"); *United States v. Mgmt. Consulting, Inc.*, 636 F. Supp. 3d 610, 621 (E.D. Va. 2022) (noting that courts have routinely offset damages without applying any offset to penalties and collecting cases); *Wilkins ex rel. U.S. v. State of Ohio*, 885 F. Supp. 1055,

JOINT SUBMISSION ON THE LEGAL
MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

13

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

1060 (S.D. Ohio 1995) ("[W]hile § 3729(a) authorizes the recovery of any damages sustained by the United States upon proof of those damages by the plaintiff, no damages need be proved in order to recover the civil penalty of $5,000 specified in that section.").

Here, each $0 claim reflects a submission of a charge for NovoSeven that was false. That nothing was paid and so the government was not injured does not affect counting the claim as false for purposes of calculating false claim penalties. The FCA encompasses each claim that *could* result in economic loss to the government. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 184 (3d Cir. 2001). As the court explained in *United States ex rel. Bahnsen v. Boston Scientific Neuromodulation Corp.*,

> [t]he fact that the Government did not pay for the item (and never would have) means that the Government did not suffer any damages. BSNC, however, can still be subject to a monetary penalty under the FCA if the submission otherwise meets the definition of a claim. Again, in determining whether a submission constitutes a claim, the Court reviews the issue based on the action of a defendant and does not consider how the government processed the information.

No. 11-1210, 2018 WL 4604307, at *5 (D.N.J. Sept, 24, 2018) (citing *Bornstein*, 423 U.S. at 313). In addition, attempts to have false claims paid are subject to liability under the FCA. *Id*. (citing *Hutchins*, 253 F.3d at 184).

Dated: October 17, 2025                                Respectfully submitted,

| | |
|---|---|
| Nicholas W. Brown<br>Attorney General<br><br>*s/Matthew T. Kuehn*<br>MATTHEW T. KUEHN, WSBA #30419<br>Senior Counsel<br>KARL F. SLOAN, WSBA #27217<br>NAOMI SMITH, WSBA # 49995<br>FERDINAND LUGO ORTIZ, WSBA #56806<br>Assistant Attorneys General<br>Medicaid Fraud Control Division<br>PO Box 40114<br>Olympia, WA 98502<br>Telephone: 360-586-8888<br>Facsimile: 360-586-8877 | By: */s/ Jaime L.M. Jones*<br>Jaime L.M. Jones (*pro hac vice*)<br>Matthew Bergs (*pro hac vice*)<br>Jaime R. Simon (*pro hac vice*)<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br>jaime.jones@sidley.com<br>mbergs@sidley.com<br>jaime.simon@sidley.com<br><br>Mark P. Guerrera (*pro hac vice*)<br>Jennifer L. Saulino (*pro hac vice*)<br>Elizabeth Noel Ertle (*pro hac vice*) |

JOINT SUBMISSION ON THE LEGAL MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

14

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

| | |
|---|---|
| Matthew.Kuehn@atg.wa.gov<br>Karl.Sloan@atg.wa.gov<br>Naomi.Smith@atg.wa.gov<br>Ferdinand.LugoOrtiz@atg.wa.gov<br><br>*Counsel for Plaintiff State of Washington*<br><br>By *s/Douglas C. McDermott*<br><br>Douglas C. McDermott, WSBA #31500<br>McDermott Asan, PLLC<br>doug@mcdermottasan.com<br>Logan Building<br>500 Union Street, Suite 909<br>Seattle, Washington 98101<br>Telephone: 206-949-3252<br><br>Reuben A. Guttman (*pro hac vice*)<br>Traci L. Buschner (*pro hac vice*)<br>Nancy Gertner (*pro hac vice*)<br>Elizabeth H. Shofner (*pro hac vice*)<br>Rick Mountcastle (*pro hac vice*)<br>Guttman Buschner PLLC<br>1509 22nd St., NW<br>Washington, D.C. 20037<br>Telephone: 202-800-3001<br>Facsimile: 202-827-0041<br>rguttman@gbblegal.com<br>tbuschner@gbblegal.com<br>ngertner@gbblegal.com<br>lshofner@gbblegal.com<br>rmountcastle@gbblegal.com<br><br>Michael Burrage (*pro hac vice*)<br>Patricia Sawyer, (*pro hac vice*)<br>Whitten Burrage Law Firm<br>512 North Broadway Ave., Suite 300<br>Oklahoma City, OK 73102<br>Telephone: 405-516-7800<br>Facsimile: 405-516-7859<br>mburrage@whittenburragelaw.com<br>psawyer@whittenburragelaw.com<br><br>*Counsel for Plaintiff-Relator Jamie Siegel, M.D.* | Sidley Austin LLP<br>1501 K Street, NW<br>Washington, D.C. 20005<br>Telephone: (202) 736-8000<br>Facsimile: (202) 736-8711<br>mguerrera@sidley.com<br>jennifer.saulino@sidley.com<br>elizabeth.ertle@sidley.com<br><br>By: /s/ *John Wolfe*<br>John Wolfe (WSBA# 8028)<br>Aaron Brecher (WSBA# 47212)<br>Orrick Herrington & Sutcliffe LLP<br>wolfe@orrick.com<br>abrecher@orrick.com<br>401 Union Street, Suite 3300<br>Seattle, WA 98104-7097<br>Telephone: (206) 839-4332<br>Facsimile: (206) 839-4301<br><br>*Attorneys for Defendant Novo Nordisk Inc.* |

JOINT SUBMISSION ON THE LEGAL MEANING OF A "CLAIM" FOR PAYMENT
Case No. 3:23-cv-05459-BHS

15

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000